**Vincent P. BRADY, Plaintiff,**

**v.**

**TRANS WORLD AIRLINES, INC., a corporation of the State of Delaware, and the International Association of Machinists, an unincorporated association, Defendants.**

**Civ. A. No. 1884.**

United States District Court
D. Delaware.

June 10, 1959.

Irving Morris (of Cohen & Morris), Wilmington, Del., for plaintiff.

Stephen E. Hamilton, Jr. (of Richards, Layton & Finger), Wilmington, Del., Edward R. Neaher and Arthur M. Wisehart (of Chadbourne, Parke, Whiteside & Wolff), New York City, of counsel, for defendant, Trans World Airlines, Inc.

H. Albert Young and Bruce M. Stargatt (of Morford, Young & Conaway), Wilmington, Del., Edward J. Hickey, Jr., and James L. Highsaw, Jr. (of Mulholland, Robie & Hickey), Washington, D. C., for defendant, International Ass'n of Machinists.

CALEB M. WRIGHT, Chief Judge.

This matter is before the court on defendant, The International Association of Machinists' (IAM) motion to dismiss the Second Amended Complaint "on the grounds that (1) the Court lacks jurisdiction over the subject-matter of the Complaint, as amended; and (2) the Complaint, as amended, fails to state a claim upon which relief can be granted." Diversity of citizenship does not exist.

Plaintiff's essential allegations of fact are:[1]

"Brady was *not* delinquent in the payment of his dues. He tendered his dues in time to avoid being held delinquent by the IAM. His tender of dues was refused. The IAM's refusal to accept his dues is unexplainable except on the basis that it wanted to be rid of Brady. Despite Brady's timely tender of dues, the IAM before the SBA and previously in this Court claimed that Brady was delinquent. * * * The discrimination against Brady was the fact that the IAM refused to accept tender of his dues which was not the attitude the IAM took with respect to other members of Brady's Local 1776. Not content with discriminating against Brady by refusing to accept his dues, the IAM thereafter 'pulled out all stops' in an effort to have Brady discharged. The tack the IAM took was to claim that he had not paid dues (misrepresenting the fact). The action which the IAM took against Brady under its claim that he had not paid dues was action which the union did not take against other members of Local 1776, who were, in fact, delinquent in the payment of their dues. The purpose of Brady's allegation (and what he believes the proof in this case will show) is that the IAM made out a fictitious case against Brady using a 'test', which test the IAM itself was unwilling to apply to other members of the IAM Local. Thus, the discrimination."

A perusal of the aforementioned contentions indicates that plaintiff sets forth two distinct claims, namely:

(1) Plaintiff was discharged in violation of 45 U.S.C.A. § 152.[2]

(2) The Brotherhood's discriminatory actions in causing plaintiff's discharge constitute a breach of the bargaining representative's duty under the Railway Labor Act to represent all members of the craft fairly without discrimination.[3]

---

1. Plaintiff's Brief in Opposition to Motion to Dismiss Second Amended Compaint, pp. 5–6.

 "* * * Brady brings this action pursuant to the provisions of the United States Code, Title 45, Chapter 8, and more particularly Title II, Section 201 and Title I, Section 2 of the Railway Labor Act, to the extent the provisions of Title I, Section 2 are made applicable by Title II, Section 201, the aforesaid sections also being known as 45 U.S.C. [§§] 181 and 152, and pursuant to the provisions of 28 U.S.C. Section 1331 and

2. This section is made applicable to Carriers by Air, 45 U.S.C.A. § 181.

3. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. Brady v. TWA, D.C.Del.1958, 167 F.Supp. 469; Cherico ·v. Brotherhood of Railroad

1337." Second Amended Complaint, par. 18.

■ The court holds plaintiff's averments re discrimination are sufficient to bring him within the purview of this court's adjudication filed October 28, 1958.[4]

■ The bargaining representative's statutory duty "to represent fairly and without hostile discrimination all of the employees in the bargaining unit", and "not to draw 'irrelevant and invidious' distinctions among those it represents" [5] clearly proscribes arbitrary invocations of union security provisions to reprimand the membership.[6] If inaction be interdicted [7] manifestly affirmative discriminatory conduct cannot be countenanced.

■ Plaintiff's claim that he was discharged in violation of 45 U.S.C.A. § 152, particularly Section 152, Eleventh (a) raises a serious question of statutory construction. This provision in pertinent part provides:

"Eleventh. Notwithstanding any other provisions of this chapter, * * * any carrier or carriers * * * and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: *Provided,* That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

Defendant submits that the proviso language of the enactment merely declares illegal agreements which, on their face, do not conform to the statute. Thus, under defendant IAM's view, so long as the collective bargaining agreement is couched in terms of the Act, conduct under any circumstance, cannot give rise to a federally cognizable claim.

Although the proviso does appear to speak of "no agreement shall" to adopt defendant IAM's construction and so limit its application would render the provision impotent. The Conley court rejected the identical argument where it was urged as limiting the duty of the bargaining agent to refrain from negotiating agreements discriminatory in terms and/or effect. Mr. Justice Black cogently observed: [8]

Trainmen, D.C.S.D.N.Y.1958, 167 F. Supp. 635; Vol. 2 U.S.Code Congressional Service, 81st Congress, 2d Session 1950, p. 4322: "Your committee also desires to make it clear that nothing in this bill [S. 3295] is intended to modify in any way the requirement that the authorized bargaining representative shall represent all the employees in the craft or class, including nonunion employees as well as members of the union, fairly, equitably, and in good faith. (See Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187)."

4. Brady v. TWA, supra.

5. Conley v. Gibson, 1957, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

6. "If the unions are to represent all of its members equitably, it breaches its duty if it discriminates against an individual as well as against a class or a recognized minority group." Cherico v. Brotherhood of Railroad Trainmen, D.C. S.D.N.Y.1958, 167 F.Supp. 635, 637.

7. Note 5, supra.

8. Note 5, supra.

"* * * A contract may be fair and impartial on its face yet administered in such a way, with the active or tacit consent of the union, as to be flagrantly discriminatory against some members of the bargaining unit." [355 U.S. 41, 78 S. Ct. 102.]

The legislative history makes it crystal clear that if an employee be expelled from membership for any reason other "than his failure to tender the uniformly required periodic dues, initiation fees, and assessments, he cannot be required to relinquish his job because of his failure to join or remain a member of a labor organization."[9] Defendant asserts that the court is precluded from resorting to statements evidencing the policy bottoming the proviso without demonstrating that the statutory language is ambiguous.

45 U.S.C.A. § 152, Eleventh (a) not unlike other provisions of the Railway Labor Act is incapable of literal application.[10] For instance, the section as worded suggests the anomalous result that a member may not be discharged for failing to maintain membership but only for failing to acquire membership.[11] Manifestly the drafters could not have intended the aforementioned construction; neither could they have purposed the interpretation placed upon the second proviso by defendant.[12]

The 1951 amendment permitting carriers and employee representatives to bargain for union security, discloses

9. Vol. 2 U.S.Code Congressional Service, 81st Congress, 2d Session 1950, p. 4322.

10. Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 488-489, 77 S.Ct. 421, 425, 1 L.Ed.2d 480:

"At first glance the language of Section 2, Eleventh (c) would appear to be disarmingly clear: union-shop contracts are satisfied if the employee belongs to any union which happens to be national in scope and organized in accordance with the Act. And if that be its meaning we would then have to deal with the questions reached by the Court of Appeals. However, as so often happens, when the language of the statute is read, not in a vacuum, but in the light of the policies this Section was intended to serve, it becomes clear that the purpose of Congress was not, as respondent contends, to give employees in the railroad industry any blanket right to join unions other than the authorized bargaining representative, or to help dissident or arising new unions recruit new members. Rather, the sole aim of the provision was to protect employees from the requirement of dual unionism in an industry with high job mobility, and thus to confer on qualified craft unions the right to assure members employment security, even if a member should be working temporarily in a craft for which another union is the bargaining representative. * * *"

11. Compare 45 U.S.C.A. § 152 Eleventh (a):
"(a) to make agreements, requiring, *as a condition of continued employment*, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class * * *." (Emphasis supplied.) with first clause of TWA-IAM agreement, Article XXVI:

"Each employee now or hereafter employed in any work covered by this Agreement shall, as a condition of continued employment in such work, within sixty (60) days following the beginning of such employment or the effective date of this Article, whichever is later, become a member of, and thereafter maintain *membership in good standing* * * *." (Emphasis supplied.)

12. United States v. Shirey, 359 U.S. 255, 79 S.Ct. 746, 749, 3 L.Ed.2d 789:
"Statutes, including penal enactments, are not inert exercises in literary composition. They are instruments of government, and in construing them 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' United States v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 408, 49 L.Ed. 696. This is so because the purpose of an enactment is embedded in its words even though it is not always pedantically expressed in words. See United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508. Statutory meaning, it is to be remembered, is more to be felt than demonstrated, see United States v. Johnson, 221 U.S. 488, 496, 31 S.Ct. 627, 55 L.Ed. 823, or, as Judge Learned Hand has somewhere put it, the art of interpretation is 'the proliferation of purpose.' * * *"

that the sole requirement the bargaining agent could extract from its members as a condition of continued employment was the tender of "periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."[13]

 An employee whose discharge is precipitated by a union covered under the provisions of the Railway Labor Act for reasons other than enunciated in the statute, absent Congressional preemption,[14] may have recourse to a federal court. To hold otherwise would be a perversion of the general statutory scheme and defeat entirely the declared purposes of Congress.[15]

Prior to the 1951 amendment an employee could not be discharged at the request of the certified bargaining agent for failing to retain union membership.[16] No language in 45 U.S.C.A. § 152, Eleventh (a) permitting a carefully circumscribed form of union security indicates that Congress intended to deprive the federal courts of actions based upon allegations that a union member was certified for discharge by his bargaining agent, notwithstanding, he had fulfilled his financial obligation to the brotherhood.

There remains for consideration a third source of federal jurisdiction, namely, the union security provision of the collective bargaining agreement violates the second proviso of 45 U.S.C.A. § 152, Eleventh (a). The contractual provision in pertinent part provides:[17]

13. 45 U.S.C.A. § 152, Eleventh (a).

14. The instant proceeding is not one in which a System Board of Adjustment created pursuant to 45 U.S.C.A. § 184 has jurisdiction. Brady v. TWA, D.C. Del.1958, 167 F.Supp. 469. See also Felter v. Southern Pacific Co., 1959, 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854; Conley v. Gibson, supra; Cunningham v. Erie R. Co., 2 Cir., 1959, 266 F.2d 411.

15. Vol. 2, U.S.Code Congressional Service, 81st Congress 2d Session 1950, pp. 4321–4322:
"* * * The proposal was made by Senator Lehman that your committee's intention be made clear that such employees were not to be deprived of their employment as a result of the exercise of the right extended by this bill. Your committee desires to make it clear that the proviso clauses in paragraph eleventh (a) are designed to protect such employees; thus if an employee is denied membership or is eligible for membership only on terms and conditions not generally applicable to other members, he cannot be requested to give up his job because of his failure to join a labor organization. Furthermore, if membership is denied or if an employee is expelled from membership for any reason other than his failure to tender the uniformly required periodic dues, initiation fees, and assessments, he cannot be required to relinquish his job because of his failure to join or remain a member of a labor organization. * * *"
"* * * It is the view of your committee that the terms of S. 3295 are substantially the same as those of the Labor-Management Relations Act as they have been administered and that such differences as exist are warranted either by experience or by special conditions existing among employees of our railroads and airlines." Vol. 2 U.S.Congressional Service, 81st Congress, 2d Session 1950, p. 4321.
Compare 29 U.S.C.A. § 158(a) (3):
"* * * Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization, * * * (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

16. Vol. 2 U.S.Congressional Service, 81st Cong., 2d Sess., pp. 4319–4321; 45 U.S.C.A. § 152, Fifth. See also Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 489, 77 S.Ct. 421, 1 L.Ed.2d 480. "* * * It is true that at the time of its passage in 1951 Subsection Fifth of § 152 made it unlawful for a railway to require an employee to join any union as a condition of employment, and we may assume, arguendo, that that subsection still forbids a 'closed shop.' * * *" Otten v. Baltimore & Ohio R. Co., 2 Cir., 1953, 205 F.2d 58, 60.

17. TWA–IAM agreement, effective March 11, 1955, Article XXVI, pp. 62, 63, 67.

"(a) Each employee now or hereafter employed in any work covered by this agreement shall, as a condition of continued employment in such work, within sixty (60) days following the beginning of such employment or the effective date of this Article, whichever is later, become a member of, and thereafter maintain membership in good standing (as herein defined), in the Union, except as provided otherwise herein. Such condition shall not apply * * * with respect to any employee to whom membership is denied or terminated for any reason other than the failure of the employee to tender the dues uniformly required of other members of his classification (and at his point on the Company's system) as a condition of acquiring or retaining membership.

"For the purpose of this Article, 'membership in good standing in the Union' shall consist of the payment by the employee of dues for each calendar month, not later than the last day of the following calendar month, which are uniformly required of members of his classification (and at his point on the Company's system) as a condition of acquiring or retaining membership.

* * * * * *

"(e) When an employee becomes delinquent by not meeting the requirements of (a) above for 'membership in good standing in the Union', the following procedure shall be observed:

"(1) The General Chairman of the Union shall notify the employee by registered letter, return receipt requested, copy to the Company's Vice President of Industrial Relations, that the employee is delinquent in the payment of dues as specified herein and accordingly is subject to discharge as an employee of the Company. * * *

* * * * * *

"(n) Whenever the term dues is referred to in this Article, such use of the word 'dues' shall include initiation or reinstatement fees, periodic dues, and assessments (not including fines and penalties), * *."

The definition of membership in good standing set forth in the above-quoted Article as "the payment by the employee of dues for each calendar month, not later than the last day of the following calendar month" does not seem to conform with Article E, Section 14 of the IAM constitution which in essence provides for a three month grace period.[18] At one stage of the proceedings counsel for defendant conceded the variance:[19]

"Now, the way he gets that is this: *The union shop agreement itself provides that a member shall be in good standing if he is not delinquent for more than one month. In other words, the union shop agreement provision is stronger than what is in the union laws.* People can be members of the union in places where they do not have a union shop, and they would not be affected the same way. But it says one month. Then it has a provision in it that says that that delinquency of one month can be met up until the end of the next calendar month.

"So as far as the wording of the union shop agreement itself is concerned—suppose the plaintiff had only been delinquent for February, he would have nearly had up until the end of March to meet his delinquency. And if that was what we were talking about, then his argument would be a good argument. However, that was not what Mr. Miller replied to him. *What Mr. Miller replied to him, which was more generous than what was in*

---

18. International Association of Machinist Constitution, Article E, Sec. 14.

19. Transcript of proceedings April 21, 1958, Argument pp. 39–40.

*the union shop agreement, was the provisions of the union constitution which are before the court which provide that a man shall lose his good standing automatically when he is three months delinquent.* It does not make any difference whether we figure that three months on February 1 or on February 28. * * * " (Emphasis supplied.)

This matter was brought to the attention of counsel sua sponte by the court wherein after pointing out the aforementioned discrepancy the court suggested: [20]

"In view of the foregoing, does not Article XXVI (e) which prescribes the procedure for union certification for delinquency 'by not meeting the requirements of (a) above for membership in good standing in the union' raise a statutory claim? It seems to me that Article XXVI (e) would permit the discharge for a dues delinquency of but two months and since the constitution permits a three months delinquency before termination of union membership, I question whether this is not specifically contrary to the second proviso of 2 Eleventh (a):

" 'Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or *with respect to employees to whom mem-*

bership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, * * * uniformly required as a condition of acquiring or retaining membership.' (Emphasis supplied.)

"Thus, under the above construction, could there be any question but that the court has jurisdiction in the premises?

"Since this matter is raised for the first time by me, I would appreciate hearing the views of counsel at their earliest convenience."

IAM replied that counsel's previous statement was erroneous and proceeded to submit a revised construction.[21]

Plaintiff answered, "that on analysis there is no inconsistency between Article E, Section 14 of the IAM constitution and Article XXVI (a) of the TWA–IAM agreement," however, "there is considerable difference between the IAM's explanation of the consistency of the two sections and Brady's." [22]

■ Under the recent Supreme Court pronouncement in Felter v. Southern Pacific Co., [23] it would seem unquestionably that the validity of an agreement executed pursuant to 45 U.S.C.A. § 152, Eleventh (a) is federally cognizable, notwithstanding that the case solely presented a 45 U.S.C.A. § 152, Eleventh (b) agreement.

Particularly applicable to the present litigation is footnote 3, wherein Mr. Justice Brennan states: [24]

20. Letter dated February 4, 1959.

21. "Upon consideration of the point raised in the Court's February 4th letter, the language of the entire Article XXVI (a), and the record of the proceedings before the System Board of Adjustment, counsel believes that he was in error in stating during the April 21st argument that there is any difference between Article XXVI (a) and Article E, Section 14 of the IAM Constitution." Supplemental Memorandum of IAM in Support of Motion to Dismiss Second Amended Complaint, p. 5, filed March 4, 1959.

22. Supplemental Reply Brief of Vincent P. Brady, p. 3, filed April 22, 1959. But see plaintiff's letter of February 16, 1959: "Although I have not argued that the inconsistency with respect to dues between the Union Constitution and the IAM–TWA Agreement invalidates the agreement under the Federal Statute, I believe the argument is meritorious and is encompassed within the complaint as initially filed and as amended."

23. 1959, 359 U.S. 326, 79 S.Ct. 847, 850, 3 L.Ed.2d 854.

24. Note 23, supra.

"The Trainmen's position, concurred in by the company, is that this provision means that no revocation cards are to be recognized 'except those reproduced by our organization.' While this construction of the agreement is hardly an obvious one, it is the construction put on the agreement by the parties to it, the Southern Pacific and the Trainmen, and since petitioner in this suit does not question it as a matter of construction, we of course accept it here.

"Since there was no question of interpretation or application of the collective agreement, but rather only one of its validity under the statute, the case is not one in which resort to the grievance and Adjustment Board machinery provided by the Railway Labor Act was required. 'This dispute involves the validity of the contract, not its meaning.' Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 1025, 96 L.Ed. 1283. Cf. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 242–244, 70 S.Ct. 577, 578–580, 94 L.Ed. 795. The case presents an employee dispute as much, if not more, with the labor organization as with the employer. Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 205, 65 S.Ct. 226, 233, 89 L.Ed. 173."

Unfortunately the posture of the immediate proceeding does not mirror Felter, supra, with respect to the construction of the respective bargaining agreements. In Felter the agreement, as construed by the carrier and bargaining agent, was not questioned by the aggrieved employee.[25] Here no accord on the interpretation of Article XXVI has been reached.

In view of plaintiff's allegation that defendant violated 45 U.S.C.A. § 152, Eleventh (a), and the patently ambiguous contractual language, with one possible construction leading toward illegality, it is deemed that jurisdiction in the

premises has been properly reposed in this court within the purview of Felter, supra.

Accordingly, defendant's motion to dismiss the second amended complaint is denied. The court further denies defendant's application for an interlocutory certificate pursuant to 28 U.S.C.A. § 1292(b). To place this case in proper perspective for appellate review the factual disputes should be resolved.

Submit order.