**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL UNION OF OPERAT- ING ENGINEERS, LOCAL NO. 139, Respondent.**

**No. 17635.**

United States Court of Appeals, Seventh Circuit.

Feb. 27, 1970.

**18**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nan C. Basses, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., for petitioner.

Gerry M. Miller, Milwaukee, Wis., for respondent, Goldberg, Previant & Uelmen, Milwaukee, Wis., of counsel.

Before HASTINGS, Senior Circuit Judge, and CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its order against respondent (Union), based on a finding that in threatening to terminate and in terminating the employment of a suspended member the Union violated Sections 8(b) (1) (A) and (2) and 8(a) (3). The order will be enforced.

Since 1952 Charles Schlitz held cards in both the Union and a laborers' union. In 1961 he stopped paying dues to the Union, because his employer, Peter Ploskee Construction Company, did not have enough work within the Union's jurisdiction; Schlitz was then suspended from the Union, and thereafter he worked for Ploskee as a foreman of laborers. In May, 1967, Schlitz was employed by Camosy Construction Company as an operating engineer. Under the union security agreement between the Union and Camosy he was required, for continuation of employment, to become a member of the Union within eight days. In April, 1967, Schlitz had asked Union Business Agent Brazil what fee was required for reinstatement and was erroneously told $118.00. After he began work with Camosy he tendered $118.00 to the Union as the reinstatement fee, but the Agent demanded $286.00. Schlitz did not pay that sum, the Union card did not issue, his employment was terminated for a week, he filed charges, a complaint issued and, after a hearing, the Board's order followed.

The Board adopted the Examiner's finding that the Union threatened to cause and caused the termination of Schlitz's employment. We think the finding has ample support in the record as a whole. There can be no doubt that Union Business Agent Koch directly threatened to close down the job because of Schlitz's dues problem, and that Business Agent Brazil indirectly caused Camosy to lay off Schlitz until he "straightened out" his financial problem over the reinstatement fee with the Union. The conduct of Brazil and Koch violated Sec. 8(b) (1) (A) of the Act.

The Examiner found that the Union's efforts to compel payment of the $286.00 reinstatement fee "uncoupled to back dues" were permissible and did not violate Sec. 8(a) (3) of the Act. The Board disagreed and found that the fee demanded by the Union was not "actually" a reinstatement fee but a "camouflaged attempt to collect back dues" which the Union had no right to collect, and the Union's causing termination of Schlitz's employment was unlawful and a violation of Sec. 8(a) (3).

This disagreement poses the question before us. We hold that the Board's conclusion, narrowly confined to the facts in the record before us, should be enforced. We disagree, however, with the Board's finding that the $286.00 reinstatement fee is an unlawful "levy" or "actually a camouflage" used unlawfully to indirectly collect back dues. This reason given by the Board for its decision is erroneous.

Before his suspension, Schlitz was a B branch member of the Union, the initiation fee for which was $118.00. He did not qualify for membership in the Mother Local (with an initiation fee of $286.00) since he lacked the skill to operate the requisite five pieces of equipment. Under Union rules, when Schlitz stopped paying dues he could have obtained a withdrawal card by paying $5.00. He testified he knew nothing of this privilege, but that is unlikely, since he was a member for nine years. In any event, when he first spoke to Agent Brazil

about reinstatement, Schlitz was told the fee would be $118.00. Later, when he needed the Union card, Brazil told him that under Union policy before 1965 he would owe $674.00 back dues, but under a "reduced structure" Union policy established in 1965, Schlitz owed a $244.00 balance after applying the $118.00 already tendered.[1]

The total amount included the reinstatement fee of $286.00. In the written breakdown of these figures given to Schlitz, the $286.00 amount is called "Reduction." The Examiner noted that Brazil's breakdown was in error in two items.[2] The Examiner disbelieved Agent Brazil's testimony that Schlitz was told the $286.00 was a reinstatement fee. Schlitz testified that Brazil could not explain these figures to him and that he did not understand them after a later discussion with Union Business Manager Goetz. The Examiner credited Schlitz's testimony.

■ We think that the record as a whole substantially supports the Board's finding that Schlitz's failure to comply with the erroneous, ambiguous demand made by Brazil did not justify the Union's bringing about his loss of a week's employment; and that the demand, as made, was discriminatory and an unlawful "condition of employment" in violation of Sec. 8(a) (3). Agents Brazil and Goetz did not deal fairly with Schlitz by their failure to make clear to him the basis of their demand.

■ A union may lawfully cause the discharge of an employee under a lawful union security agreement for "the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of employment." See Sec. 8(a) (3) (B). A union may not condition continued employment upon payment of "back dues" for a period when the employee had no obligation to be a member. NLRB v. Spector Freight System, Inc., 273 F.2d 272, 277 (8th Cir.), *cert. denied,* Local 600, Highway and City Freight Drivers, Dockmen and Helpers v. N.L.R.B., 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); Local 545, Int'l Union of Operating Engineers, 151 N.L.R.B. 1114 (1966). Nor can a union lawfully attempt indirectly to collect back dues where no obligation to pay dues existed. NLRB v. Spector Freight System, Inc., 273 F.2d at 277.

It is not disputed that a union may, under a lawful contract, cause an employee's discharge for failure to pay a lawful reinstatement fee. The Board also concedes that a reinstatement fee may differ in amount from an initiation fee so long as it is reasonable and non-discriminatory. Food Machinery and Chemical Corp., 99 N.L.R.B. 1430 (1952).

However, the Board argues here that a reinstatement fee may not be "geared to" back dues. This was the basis for its finding with respect to the $286.00 fee. The Board relies upon the deci-

---

1. The following figures were submitted to Schlitz:

$286 Reduction
20 Reinstatement
56 July 67 through December 67
362 Total
—118 paid (May 1, 1967)

$244 Balance

2. The Board's brief explains the errors which are not pertinent to the issue before us:

Brazil was in error in adding a separate figure of $20 for the International's reinstatement fee. Under the Union's reinstatement policy that fee was sent to the International from the $286 reinstatement charge. Brazil was also in error in his computation of the amount for dues in advance. The figure of $56 provided for dues for 7 months rather than the 6 months which Brazil was demanding (namely, 3 months' dues for the 3 months during which Schlitz had been working for the Company, plus 3 months' dues in advance pursuant to the reinstatement requirements). The balance should have been $216 ($286 plus $48 for 6 months, less $118 paid).

sions in *Spector Freight System, Inc.* and *Local 545, Int'l Union of Operating Engineers* in support of its position.

Neither of those cases supports the Board's reasoning that the $286.00 reinstatement fee is invalid because "geared to" back dues. In *Local 545* the discharge of employee Ahler was for his failure to pay "back dues and a reinstatement fee." In *Spector* the reinstatement fee was "apparent[ly] predicated on three months dues including one month before the employee was hired," and he was penalized $1.00 per month for delinquency in paying the dues for the three month period. The court held the $1.00 monthly assessment was a penalty as to which the unlawfulness was settled. The setting of the three month period—including the one pre-hire month—was the "indirectly" rule the Board relies upon. The Board's argument clearly exceeds the *Spector* rule. No case cited by the Board supports its argument that a reinstatement fee may not be "geared to" back dues.

No definition of the verb "gear" is appropriate here. The Board found the relationship of the reinstatement fee as "geared to" back dues because the $286.00 was the "upper limit" of back dues that could be collected for reinstatement. It is true that the $286.00 reinstatement fee is related to the dues, in the sense that the Union, after discussion and formal resolution, set the figure of the Mother Local initiation fee as a fee to be applied to all suspended members who, like Schlitz, were delinquent in payment of dues beyond that sum. The $286.00 figure was adopted because in rural areas some suspended members could not afford to pay total arrearages, and the making of exceptions to the total rule was not to the Union's liking. We think the most that can be said is that the Mother Local initiation fee of $286.00 was the referent used by the Union to adjust a reinstatement fee to a

practical level. As to the class to whom it applied, the fee is uniform and nondiscriminatory. There is no finding or claim here that the difference in the amount of the fees for suspended and for new members is not a rational classification. Food Machinery and Chemical Corp., 99 N.L.R.B. 1430. And there is no claim that the fee is excessive—as in Metal Workers Alliance, Inc. (TRW Metal Division), 172 N.L.R.B. 34 (1968) —in violation of Sec. 8(b) (2).

■■■ The mere relation of an initiation fee to back dues is not per se unlawful. See Simmons Co., 150 N.L.R.B. 709, 712 (1964). Obviously some referent was needed. It could better be said here that the maximum reinstatement fee was "geared to" the Mother Local initiation fee. In *Spector* the factor that the reinstatement fee was "apparent[ly]" three times a month's dues was not the defect, but rather the defect arose from the fact that one pre-hire month's dues was included in the fee. Here we think it is unreasonable to say that setting the reinstatement fee at a sum equal to an initiation fee, as in this case, is per se unlawful.[3]

Enforcement is granted.