**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FISHERMEN & ALLIED WORKERS UNION, LOCAL 33, INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, Respondent.**

No. 26455.

United States Court of Appeals,
Ninth Circuit.

Sept. 14, 1971.

John Burgoyne (argued), Russell J. Thomas, Jr., NLRB, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Ralph E. Kennedy, Director, NLRB, Los Angeles, Cal., for petitioner.

Ben Margolis (argued), of Margolis, McTernan, Smith, Scope & Herring, Los Angeles, Cal., for respondent.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE, District Judge.*

ELY, Circuit Judge:

Proceeding under section 10(e) of the National Labor Relations Act (Act), as amended, 29 U.S.C. § 160(e), the Petitioner (Board) seeks a decree enforcing an order issued by it against the Respondent (Union). The Board's order was based upon its finding that the Union had violated sections 8(b)(1)(A) and 8(b)(2) of the Act by causing an employing company to discharge an em-

---

* Honorable William M. Byrne, Senior United States District Judge, Los Angeles, California, sitting by designation.

ployee, Dominic Ciolino, for failure to pay union dues for a period antedating his employment with the discharging employer. 29 U.S.C. §§ 158(b)(1)(A), (b)(2). The Board's "Decision and Order" is reported at 180 NLRB No. 131, 1970 CCH NLRB Dec. ¶ 21,565 (1970).

In April of 1962, Ciolino joined the San Pedro Independent Fishermen's Union (Independent) because he was working for an employer which had a collective bargaining agreement with that union. Ciolino made his initial payments and was marked delinquent when he left that job in November, 1962. In June, 1962, the membership of the Independent voted to affiliate with the Union involved in this action and to accept a charter as Local 33A. In November, 1964, Local 33A voted to merge with Local 33 of the Union. Around October 1, 1968, Ciolino began working for S. G. Giuseppe Fishing, Incorporated (Company), which had a collective bargaining agreement with the Union. This agreement contained a union security clause which provided that within thirty days after a crew member is hired, the employee must become a member in good standing of the Union and that failure to be a member in good standing would render him liable to discharge. From November, 1962, until October, 1968, Ciolino had not been employed by an employer with an agreement with the Union. The Union advised Ciolino in November, 1968, a month after he had begun working for the Company, that he was delinquent and needed to pay a $135 "reinstatement" fee. Ciolino declined to pay this amount because he "never belonged to Local 33." The Union demanded Ciolino's discharge. Ciolino testified that he had offered to pay $10, but the Union representative had demanded "the full amount of money, $135, back dues." The Company then discharged Ciolino.

■ Section 8(b)(2) of the Act contains a narrow exception to the general rule that a labor organization cannot attempt to encourage membership by seeking the discharge of an employee. It permits a union to seek an employee's discharge, under an appropriate union security contract, for "failure to tender the periodic dues and the initiation fees uniformly required" of union members.[1] 29 U.S.C. § 158(b)(2). A union may not seek a discharge for nonpayment of dues and fees prior to the employee's employment at his current job when his previous employment was not under a union security clause requiring such a payment. NLRB v. Spector Freight Sys., Inc., 273 F.2d 272 (8th Cir.), cert. denied, Local 600, Highway and City Freight Drivers, Dockmen and Helpers v. N.L.R.B., 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); NLRB v. Murphy's Motor Freight, Inc., 231 F. 2d 654 (3d Cir. 1956); see NLRB v. Pacific Transp. Lines, Inc., 290 F.2d 14, 20–21 (9th Cir. 1961). Under the facts presented here, the Trial Examiner and the Board found that the Union had violated sections 8(b)(1)(A) and 8(b) (2) of the Act. The Union was ordered to cease and to desist from its unfair labor practices, to notify the Company that it had no objection to the continued employment of Ciolino, to make Ciolino whole for any loss that he suffered, and to post the usual notices.

If Ciolino had not previously belonged to the Independent or the Union, he would have been required to pay only a $20 initiation fee and two months dues of $10. Instead, because he had been for several months a member in good standing of the Independent some six years earlier, it was insisted that he should pay $135. The Trial Examiner found that this sum was referred to interchangeably as a "reinstatement fee" and "back dues that had accrued during

---

1. Section 8(b) (1) permits a union to prescribe its own rules regarding the acquisition and retention of members, but fines and penalties for violations of internal rules may not be enforced by threat of loss

of employment since they are not "periodic dues." *See* NLRB v. Spector Freight Sys., Inc., 273 F.2d 272, 275–276 (8th Cir. 1960) and cases cited therein.

the subsequent merger." The Union's constitution discloses that the reinstatement fee for former members is computed on the basis of back dues owed, up to a limit of $125, plus an additional reinstatement fee of $10. Thus, in reality, the effort to collect most of the sum represents an unlawful attempt to collect back dues or to penalize an old member for failing to maintain his membership.

A labor organization may seek an employee's discharge for failure to pay a lawful reinstatement fee, and this fee may be larger than an initiation fee as long as it is reasonable and nondiscriminatory. NLRB v. International Union of Op. Eng'rs, Local No. 139, 425 F.2d 17 (7th Cir. 1970); Metal Worker's Alliance, Inc., 172 NLRB No. 34, 1968–2 CCH NLRB Dec. ¶ 20,023 (1968); Food Mach. & Chem. Corp., 99 NLRB 1430 (1952). The Union argues that nothing in the law prohibits it from using, as a portion of the formula for determining the reinstatement fee, its own dues schedule. The assessment of excessive or discriminatory fees is a violation of section 8(b)(5), but this section was not alleged nor found to have been violated in this case. Thus, the Union asserts that merely gearing a nondiscriminatory or nonexcessive reinstatement fee to back dues is not a violation of the Act.[2] NLRB v. International Union of Op. Eng'rs, Local No. 139, supra at 19–20. We disagree, believing, as urged in the Board's petition for enforcement, that "the correct rule is that a union may not charge a 'reinstatement' fee larger than its 'initiation' fee where the difference in the amounts represents either the amount of back dues not properly owing or a penalty for not paying such dues."

Authority for the Board's position is found in NLRB v. Spector Freight Sys., Inc., 273 F.2d 272 (8th Cir. 1960), enforcing 132 NLRB 43 (1958), cert. denied, Local 600, Highway and City Freight Drivers, Dockmen and Helpers v. N.L.R.B., 362 U.S. 962, 80 S. Ct. 878, 4 L.Ed.2d 877 (1960). There the Court agreed with the Board's holding that predicating a reinstatement fee on dues delinquency for a period when the employee was under no duty to pay dues was violative of the Act. It wrote:

"We cannot sanction this procedure, because obviously it would permit a union to do indirectly what it recognizes it is prohibited from doing directly. As stated by the Board in Local 140, etc., 109 N.L.R.B. 326, at p. 328, 'In both instances, the employees are penalized for not paying dues at a time when they were legally privileged to refuse to do so without jeopardizing their jobs.'"

*Id.* at 277. *See also* Local 545, Int'l Union of Op. Eng'rs, 161 NLRB 1114 (1966). Under very similar circumstances, the Board held in International Union of Op. Eng'rs, Local 139, 172 NLRB No. 12, 1968–1 CCH NLRB Dec. ¶ 22,639 (1968), enforced on other grounds, 425 F.2d 17 (7th Cir. 1970), that the reinstatement fee was a "camouflaged attempt to collect back dues," in violation of sections 8(b)(1)(A) and 8(b)(2). The United States Court of Appeals for the Seventh Circuit disagreed with this portion of the Board's opinion. 425 F.2d at 19–20. The rejection of that portion of the Board's opinion was, however, unnecessary to the resolution of the petition for enforcement, since the Court did enforce the Board's order. Thus, we do not feel compelled to follow that enunciation. The Court concluded by saying that it was "unreasonable to say that setting the reinstatement fee at a sum equal to an initiation fee, as in this case, is per se unlawful." *Id.* at 20. Here, the fee was almost seven times as large as the initiation fee. We can find no justification for the imposition of such a large sum, which constituted either an illegal levy of back dues or an improper penal-

2. We obviously have rejected the Board's claim that the Union's failure properly to challenge the Trial Examiner's earlier rejection of the reinstatement fee contention forced abandonment of this issue.

ty. While we reject the Seventh Circuit's dicta, it should be emphasized that we do not announce or apply a per se rule. Thus, we are, to that extent, in consonance with our Brothers of the Seventh Circuit.

Having reviewed the record as a whole, we conclude that the Board's critical findings are supported by substantial evidence and that its Order should be

Enforced.