**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KAISER STEEL CORPORATION** and Laborers' International Union of North America, Local No. 1184, Respondents.

No. 73–3034.

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1974.

Peter Carre, Gen. Counsel, N.L.R.B., Washington, D. C. (argued), for petitioner.

William F. Hoefs of Thelen, Marrin, Johnson & Bridges (argued), San Francisco, Cal., and Ivan J. Potts, Richman & Garrett, Los Angeles, Cal., for respondents.

Before BROWNING, CARTER and CHOY, Circuit Judges.

## OPINION

JAMES M. CARTER, Circuit Judge:

This case is before the court upon the application of the NLRB pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The NLRB seeks enforcement of its order against Kaiser Steel Corp. ("the Company") and the Laborers' International Union of North America, Local 1184 ("the Union"), requiring the Company and the Union to cease and desist their unfair labor practices culminating in the discharge of Louis O. Morgan, and to reinstate Morgan with full seniority and privileges, and to make him whole for the time lost due to the discharge. The Board's Order is reported at 205 NLRB 34.

The Company and the Union contend that Morgan was validly discharged for failure to pay a second initiation fee claimed to be "uniformly required" within the meaning of §§ 8(a)(3) and 8(b) (3) of the NLRA, 29 U.S.C.A. § 158(a) (3) and (b)(3), upon transferring from one union to another. We enforce the Order.

## FACTS

Louis O. Morgan was first employed as a Laborer at Kaiser's (the Company's) Eagle Mountain mining operations camp in February, 1960. He paid an initiation fee on joining the Laborers' Union. In 1964, he was promoted to the job of heavy duty truck driver and, because he thought he had to do so, voluntarily paid the initiation fee of $87.00 and monthly dues to the Teamsters' Union upon beginning his new job. He allowed his membership in the Laborers' Union to lapse, because he "did not think

[he] would work for the Laborers as a laborer any more." He could have taken a withdrawal card from the Laborers' Union, by means of which he could resume full membership by simply paying his monthly dues (without payment of another initiation fee), but he chose instead to allow his membership to lapse altogether.

In December, 1971, the Company announced a temporary shutdown for four to six weeks, beginning in January, 1972. Under the terms of the Collective Bargaining Agreement (see infra), Morgan retained seniority rights acquired during his employment at the same facility as a Laborer. To avoid being laid off, Morgan exercised his seniority and "bumped" from his truck driver job back to his former Laborer job. Under the supplemental seniority agreement to the contract, a senior employee in the Laborers classification could progress to higher paying jobs in other crafts within the bargaining unit, while retaining seniority in the lower job classification. In the event of a layoff, he could use his seniority to "bump back" to his former classification. On February 8, 1972, Morgan took a withdrawal card from the Teamsters' Union because he believed that he would be back to work as a heavy duty truck driver before his initiation fee obligation to the Laborers' Union became due. His dues were paid to the Teamsters' Union through the end of February, 1972.

Two or three weeks after assuming his duties as a Laborer, Morgan was told that he would have to join the Laborers' Union (including payment of a $109 second initiation fee) or be terminated. Morgan attempted first to avoid and then pay the initiation fee. To briefly summarize, Morgan was granted two weeks vacation upon receiving word that his father had died. Upon his return, he offered to pay $10 (as much as he was able to pay) and to "make every effort to pay more each month until I am paid up." This offer was rejected, and on February 8, 1972, he was told that he must pay the fee by

the next day or be terminated. On February 9 and 10, he drove to Indio, Rialto, Riverside, and Indio again in an effort to clarify the situation or pay his fee. On February 10, he was told that he had been terminated by the Company pursuant to a request from the Laborers' Union, and on the basis of his failure to pay the initiation fee.

The NLRB concluded that in so terminating Morgan the (Laborers') Union violated § 8(b)(2) and (1)(A) of the NLRA, 29 U.S.C.A. § 158(b)(2) and (1)(A) by causing Morgan's discharge, and that the Company violated § 8(a)(3) and (1), 29 U.S.C.A. § 158(a)(3) and (1) of the Act by implementing that discharge for nonpayment of a second initiation fee upon transfer from one job to another within the certified bargaining unit. The Board also found that the threatened discharge on the same basis was in itself a violation of the Act. The Board's Order required the Union and the Company to cease and desist from the unfair labor practices found, to reinstate Morgan with back

pay and without prejudice to his seniority or other rights and privileges, and to post appropriate notices.

The National Labor Relations Act contains a general prohibition against job discrimination "to encourage or discourage membership in any labor organization." § 8(a)(3) and (b)(3) of the Act, 29 U.S.C.A. § 158.[1]

There is a limited exception in the section permitting "union security" agreement[2] between employers and unions, but the section contains a number of restrictions as to the exception. The one we consider here precludes the discharge of an employee under a union security agreement where membership (and employment) was denied him for reasons other than his failure to tender "the periodic dues and the initiation fees *uniformly* required as a condition of acquiring or retaining membership." (Emphasis supplied).

Here, the production and maintenance employees of Kaiser at the Eagle Mountain foundry were represented in a cer-

1. 29 U.S.C. § 158(a) and (b), § 8(a) and (b) of the Act to read in part:
"§ 158. Unfair labor practices
   (a) It shall be an unfair labor practice for an employer—
      *     *     *     *
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made . . . . *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization . . . (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the *periodic dues*

and the initiation fees *uniformly required* as a condition of acquiring or retaining membership;
      *     *     *     *     *
   (b) It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . . ;
   (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender *the periodic dues and the initiation fees uniformly required* as a condition of acquiring or retaining membership . . . ." (Emphasis added).

2. The union security clause in our case appears in Art. 3 of the Collective Bargaining Agreement between the Council and the Company. It reads as follows:
   "All employees covered by the Agreement shall within thirty-one (31) days after employment . . . become members of the appropriate Craft Union and shall remain members of said Craft Union as a condition of employment. . . ."

tified, single comprehensive bargaining unit. Five unions were included, of which the Teamsters and the Laborers are involved in the present case.

The Council, comprised of representatives of the five unions, is the certified representative for the comprehensive bargaining unit. The collective bargaining unit agreement provides for "membership" in the Council's constituent local unions rather than the Council itself. The agreement also permits job transfers across union jurisdictional lines and provides for progressing to a higher paying job classification and for "bumping" back to a lower classification to avoid a layoff. There is nothing in the agreement indicating that transfers within the bargaining unit require additional union initiation fees.

## DISCUSSION

The phrase "periodic dues and the initiation fees uniformly required" must be applied to a number of differing factual situations.

(1) A single, lump sum initiation fee required from employees entering the bargaining unit presents no problem and readily falls within the term "uniformly required."

(2) Transfers between unions where the unions are *not* part of the same collective bargaining unit constitute another category.

(3) Upon a transfer into a higher paying classification, Aluminum Workers Trade Council, 185 NLRB 69, 70 (1970) required the employee to pay the difference between the initiation fee for the new, higher paid classification and the initiation fee previously charged for the lower classification. It did not require the employee to pay an entirely new initiation fee.[3] The Board justified the result as being reasonable and within the ability of the employee to pay.

(4) The Board has upheld the reasonableness of a classification which im-posed no initiation fee for a recently discharged veteran, but a $30 initiation fee for other new members. Food Machinery and Chemical Corporation, 99 NLRB 1430 (1952).

(5) The Board has found unjustifiable, and in the nature of a fine, a fifty cent per month addition to dues for non-attendance at union meetings. Electric Auto-Lite Company, 92 NLRB 1073 (1950), enforced, NLRB v. Electric Auto-Lite Company, 196 F.2d 500 (6 Cir. 1952).

(6) Another category involves reinstatement fees where a member has left the union and some time later seeks to rejoin. The initiation fee may be larger than the original fee. NLRB v. Fishermen & Allied Workers' Union, 448 F.2d 255, 257 (9 Cir. 1971). But a fee larger than the original initiation fee may not be charged when the difference in amount represents back dues not properly owing or a penalty for non-payment of such dues. *Fishermen*, *supra*, at 257.

In the present case the transfer of Morgan from the Teamsters' Union to the Laborers' Union pursuant to his "bumping" privilege, was to a *lower* paying classification, a decline in wages from $4.595 to $3.67 per hour. A reasonable ability to pay factor such as presented in *Aluminum Workers*, supra, would not be involved.

The transfer *within* the bargaining unit was specifically sanctioned by the collective bargaining unit. The Union was in effect imposing a charge on exercising the contractual right to "bump back," which went beyond the fees and dues required to support Union representation.

■ Fees designed to discourage intra-unit transfers are not part of the regular structure of dues and fees which can be compelled as a condition of employment. They smack of the "improper

---

3. Morgan *voluntarily* paid the entire new initiation fee on moving up to the Teamster job. He was not compelled to and under *Aluminum Workers, supra*, probably would not have been required by the Board to do so.

penalties" disapproved in *Fishermen, supra.*

■ Nor can the new initiation fee here be considered a reinstatement fee. The Laborers' Union demand for an "initiation fee" clearly indicated it was treating Morgan as a new employee seeking admission to the Union rather than a returning employee. The fee cannot be justified as a re-instatement fee for a former employee coming back into the represented unit. *See* Food Machinery and Chemical Corp., 99 NLRB 1430, 1431–32 (1952); IAM, Precision Lodge #1600 (Adel Precision Products) 120 NLRB 1223, 1225–27 (1953).

The Board in the present case held that when the Laborers' Union had allied itself with the Council in a unitary bargaining setup, it could not treat employees transferring from other unions within the bargaining unit as outsiders for the purpose of exacting another initiation fee.

The Board concluded that such "repetitive initiation fees assessed during the course of continuous employment only upon those employees who work in more than one job classification within the [bargaining] unit, and not assessed upon others who work in but one classification, seem clearly to violate both the letter and the spirit of the proviso's uniformity requirement."

■■ This area of labor law involves "equitable principles and standards" which are within the Board's "specialized competency and knowledge." NLRB v. Technicolor Motion Picture Corp., 248 F.2d 348, 358 (9 Cir. 1957). In this present case we think we should yield to the Board's competency.

■ We conclude that as to initiation fees imposed by unions, there are various recurring categories, each with differing facts. Each of the categories is intrinsically different. The Board should apply its rule reasonably and uniformly to *each category*. There is no showing that it has not done so here.

The Order will be enforced.