NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GENERAL TEAMSTERS LOCAL NO. 439, Respondent.

Paul McMillen, Intervenor.

No. 86–7722.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1987.

Decided Jan. 27, 1988.

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., for petitioner.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondent.

Karen E. Ford, Major Williams Jr., Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for intervenor.

Before SKOPIL and POOLE, Circuit Judges, and CURTIS,[*] District Judge.

SKOPIL, Circuit Judge:

The sole issue presented by the Board's application for enforcement of its decision and order is whether an employee's resignation of union membership becomes effective when placed in the union's after-hours deposit box. The Board rejected the union's position that the resignation was effective only when discovered by union officials. We conclude that the Board's decision is defensible and reasonable. The Board's order will be enforced.

## FACTS AND PROCEEDINGS BELOW

During an economic strike called by respondent General Teamsters Local No. 539 ("union"), intervenor Paul McMillen ("McMillen") elected to resign from the union and return to work. He submitted his resignation during the night by leaving a notarized letter in the union's night drop box. The following morning, McMillen crossed the picket line and returned to work.[1] His letter of resignation was dis-

covered by the union when the office opened about an hour after McMillen had returned to work.

Over the next few months McMillen continued to tender his dues to the union. Although the union initially accepted his dues, it eventually returned them maintaining that McMillen had resigned his membership. Thereafter, the union sought to invoke the union-security clause of the collective bargaining agreement. McMillen was told that he must rejoin the union by paying an initiation fee. When McMillen refused, the union sought to have his employment terminated. After the employer refused to terminate McMillen, the union filed internal charges alleging that McMillen violated the union's constitution by crossing a lawful picket line. McMillen was fined and placed on probation for the duration of the collective bargaining agreement.

Unfair labor practice charges were commenced against the union on the grounds that it violated sections 8(b)(1)(A) and 8(b)(2) of the Labor Act, 29 U.S.C. §§ 158(b)(1)(A) and (b)(2) (1982), by (1) demanding that McMillen pay a new initiation fee and seeking to have him discharged under the union-security clause; and (2) fining him for crossing the picket line. The Administrative Law Judge ("ALJ") and the Board found that the union committed an unfair labor practice by coercing McMillen to pay a new initiation fee and attempting to have him discharged. The ALJ rejected, however, the unfair labor practice charge pertaining to the fine. The ALJ reasoned that McMillen's resignation was not effective until it was discovered by the union after McMillen returned to work.

The Board rejected the ALJ's reasoning. It concluded that McMillen's action of placing his resignation into the union's night box was sufficient to give notice to the

---

[*] The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

1. McMillen raised for the first time at oral argument the contention that although he returned to the work site that morning he did not begin work for the employer until noon. The Board

and the Administrative Law Judge found, however, that McMillen returned to work at 6:50 a.m. Our examination of the record discloses substantial evidence to support the agency's finding. Thus, we reject McMillen's argument that he did not return to work until noon.

union. The Board therefore held that the union violated section 8(b)(1)(A) by fining McMillen for crossing the picket line.

## DISCUSSION

### A. *Initiation Fee and Union-Security Clause*

The union concedes that it committed an unfair labor practice by demanding that McMillen pay a new initiation fee and thereafter attempting to enforce the union-security clause against him. Thus, the Board is entitled to enforcement of its decision on this aspect of the appeal.[2] *See NLRB v. Nevis Indus., Inc.*, 647 F.2d 905, 908 (9th Cir.1981) (failure to object on appeal constitutes waiver).

### B. *Fine for Crossing Picket Line*

■ The union concedes that it cannot restrict McMillen's right to resign or fine him if he resigned before crossing the picket line. *See Pattern Makers' League of No. Am. v. NLRB*, 473 U.S. 95, 100, 105 S.Ct. 3064, 3067, 87 L.Ed.2d 68 (1985) (union may not place restrictions on the right of members to resign); *NLRB v. Granite State Joint Bd., Textile Workers, Local 1029*, 409 U.S. 213, 217–18, 93 S.Ct. 385, 387–88, 34 L.Ed.2d 422 (1972) (union cannot fine employees who resign before crossing picket line). Thus, the only question before us is when McMillen's resignation became effective.[3]

The Board generally considers a union member's resignation effective upon its receipt by the union. *See International Ass'n of Machinists and Aerospace Workers, Local 1233*, 284 NLRB No. 132, 1986–87 NLRB Dec. (CCH) ¶ 18,830 at 32,195 n. 9

(1987). If it is unclear when "receipt" occurred, certain presumptions apply. For example, when a resignation is received on the same day that the employee crosses a picket line, "the resignation is 'presumed to have been received ... at an hour before the employee crossed the picket line' absent direct contrary evidence." *International Brotherhood of Teamsters Local 538*, 275 NLRB 730, 730 (1985) (quoting *Teamsters Local 610 (Browning–Ferris Indus.)*, 264 NLRB 886, 899–900 (1982)). If the resignation is mailed, it is presumed received the day after the mailing and at an hour before the employee crosses the picket line. *Local 610*, 264 NLRB at 899–900; *but see, American Nurses' Ass'n*, 250 NLRB 1324, 1329 (1980) (ALJ assumed that mailed resignation was not effective until close of business day or receipt). When actual receipt is contested, the Board presumes that it was received. *Hendricks–Miller Typographic Co.*, 240 NLRB 1082, 1098 (1979) (resignation effective notwithstanding union's contention that it never received the letter).

Here, it is undisputed that McMillen's resignation was placed in the union's drop box before he crossed the picket line. Thus, personal delivery was made. Normally, where personal delivery is made, the resignation is effective immediately. *NABET, Local 531*, 245 NLRB 638, 638 (1979). Nonetheless, there is an argument that for a resignation to be effective, it must be communicated to the union. For example, resignations hand delivered to rank and file picketers or to the employer are ineffective because they do not adequately communicate to the union an intent to resign. *Local 610*, 264 NLRB at 899 & n. 26.

---

**2.** The union's concession renders moot much of McMillen's contentions on appeal. His arguments on the coercive reinitiation fee, his purported financial core status, the internal union charges, and the attempted enforcement of the union-security clause are all made moot by the union's concession.

**3.** At least one court has treated that issue as one of fact. *See NLRB v. Oil Workers Int'l Union, Local 6–578*, 619 F.2d 708, 714 (8th Cir.1980) (whether employees resigned before crossing picket line is a factual determination). In that case, however, there was controverted testimo-

ny regarding the time of delivery of the resignation letters. *Id.* at 714–15. Here the facts are not disputed. When "facts are not largely in dispute; the controversy is ... the legal consequences which spring from them." *NLRB v. International Woodworkers, Local 13–433*, 264 F.2d 649, 652 (9th Cir.) (internal quotes omitted), *cert. denied*, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 63 (1959). Thus, we will enforce the Board's order if it correctly applied the law. *See NLRB v. Carpenters Local Union No. 35*, 739 F.2d 479, 481–82 (9th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985).

On the other hand, it is clear that the Board does not require that the union have actual acknowledge of a resignation before the resignation is deemed effective. In *International Brotherhood of Electrical Workers, Local Union 340*, 273 NLRB 428, 432 (1984), a resignation was effective when the postal service left a notice of attempted delivery with the union. The ALJ in that case reasoned that the failure of the union to pick up the letter until several days later should not affect the employee's right to resign. *Id.* Similarly, in *NABET*, 245 NLRB at 641–42, the resignations were hand delivered by the employees' spouses to the union office during working hours. Thereafter, the employees crossed a picket line and reported to work. Union officials did not learn of the resignations until later in the day and after the employees had been seen crossing the line. The Board found that the resignations were effective when delivered to the union's office. *Id.* at 638.

Both the ALJ and the Board in this case acknowledged that application of these rules and presumptions is inconclusive in determining when McMillen's resignation became effective. Nevertheless, it appears that the Board's rules and presumptions in this area point decidedly in favor of the employee's right to resign. When there is a question of when or whether a resignation is received, the Board presumes that it was received prior to the employee's crossing of the picket line. Under that theory, the Board's determination that McMillen's resignation was effective when deposited in the night box is consistent with its past decisions.

The Board's conclusion is also consistent with the treatment of notice outside of labor law. Although the Board has rejected application of common law contract rules to these situations, it is clear that the Board's decision in this case parallels in some respects the "mail box" rule. Here,

the Board found that the union's night deposit box was maintained for the receipt of written materials when the office was closed. Thus the union created the method of communication. Once McMillen placed his letter in the box, knowledge of the letter's contents was effectively in the sole control of the union. *See NLRB v. Vapor Recovery Sys. Co.*, 311 F.2d 782, 786 (9th Cir.1962) (actual knowledge by the party noticed is often beyond the control of the party giving notice and should not be a factor in judging the adequacy of the notice).

Finally, the Board's application of the Labor Act is entitled to deference. *NLRB v. United Ass'n of Journeymen*, 827 F.2d 579, 580 (9th Cir.1987). "To the extent that the issues involve considerations intrinsic to labor law, we defer to the NLRB's reasonable judgments." *NLRB v. Local Union 497, Int'l Brotherhood of Elec. Workers*, 795 F.2d 836, 838 (9th Cir.1986). Moreover, the Board is charged with the responsibility to determine in the first instance the reach of the protections of the Act. *Carpenters Local Union 35*, 739 F.2d at 483. If its decision is reasonable, deference should be accorded.

■ We conclude that the Board's decision is reasonable. It is consistent with the Board's prior treatment in similar circumstances. It is also consistent with notions of knowledge and notice outside the labor law area. Finally, even if we preferred a different outcome, we cannot reject the Board's decision when its interpretation of the labor law is "reasonably defensible." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

ENFORCED.[4]

---

**4.** McMillen argues that the union should be held liable for his attorney's fees. We have discretion to impose such a sanction. *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981); *see also* Fed.R.App.P. 38 and 28 U.S.C. § 1912 (1982) (permitting imposition of fees for bringing frivolous appeal).

An appeal is frivolous if it is "'wholly without merit,'" *Wellman v. International Union of Operating Eng'rs, Local 501*, 812 F.2d 1204, 1206 (9th Cir.1987) (quoting *Taylor v. Sentry Life Ins.*

*Co.*, 729 F.2d 652, 656 (9th Cir.1984) (per curiam)), or "when the result of the appeal is obvious," *Grimes v. Commissioner,* 806 F.2d 1451, 1454 (9th Cir.1986) (per curiam). We conclude that this appeal is not frivolous and therefore we decline to award fees. Although the union concedes that it committed an unfair labor practice by coercing McMillen to pay an initiation fee, the union forcefully argues that it did not violate the Act by fining McMillen. Whether McMillen's resignation was effective when placed in the union's drop box is not conclusively answered in prior caselaw.