NATIONAL LABOR RELATIONS
BOARD, Petitioner,

Janet Love, Intervenor,

v.

OFFICE AND PROFESSIONAL EM-
PLOYEES INTERNATIONAL UNION,
LOCAL 2, AFL–CIO, Respondent.

No. 89–1504.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1990.

Decided May 14, 1990.

Joseph John Jablonski, Jr. (argued), Rob-
ert E. Allen, Associate Gen. Counsel, Ai-
leen A. Armstrong, Deputy Associate Gen.
Counsel, Judith A. Dowd, Supervisory
Atty., N.L.R.B., Washington, D.C., on
brief, for petitioner.

Glenn M. Taubman, National Right to
Work Legal Defense Foundation, Inc.,
Springfield, Va., for intervenor.

Joseph E. Finley, Baltimore, Md., for re-
spondent.

Before MURNAGHAN, Circuit Judge,
BUTZNER, Senior Circuit Judge, and
KAUFMAN, Senior United States
District Judge for the District of
Maryland, sitting by designation.

BUTZNER, Senior Circuit Judge:

The National Labor Relations Board has
applied for enforcement of a Board order
directing Local 2 of the Office and Profes-
sional Employees International Union to
remedy a violation of the National Labor
Relations Act. The Board found that Local
2 violated § 8(b)(1)(A) of the Act, 29 U.S.C.
§ 158(b)(1)(A), by demanding a second initi-
ation fee from Janet Love, a Washington
Gas Light Company employee and member
of Local 2's bargaining unit. Because we
find the Board's interpretation of the Act
reasonable, we grant enforcement. The
Board's decision is reported as *Office and
Professional Employees International
Union, Local 2*, 292 NLRB No. 22 (1988).

I

This case presents us with but one issue,
which concerns the demand for a new un-
ion initiation fee from a worker who quit a
union, has no interest in rejoining, and has
worked in the same collective bargaining

unit all along. The relevant facts are undisputed. Janet Love worked for Washington Gas Light Company at its Springfield, Virginia, facility until February 1, 1987. In 1974, she joined Local 2, the union representing the company's clerical workers at Springfield. She paid an initiation fee and executed a union dues check-off authorization. She remained a member in good standing until the day before the employees went on an economic strike, June 5, 1986, when she resigned from Local 2 and ceased paying all dues. The collective bargaining agreement between Local 2 and the company contained a union security clause, but Virginia has right-to-work legislation that renders security clauses unenforceable. *See* Va.Code Ann. § 40.1–62 (1986). Love continued to work for the company at Springfield with no further obligation to the union.

Seven months later, the company transferred Love to Rockville, Maryland. The company's clerical employees at Rockville and Springfield are part of the same bargaining unit and are covered by the same agreement. So far as Local 2 was concerned, the only change affecting Love occasioned by the transfer was the applicability of the union security clause. Maryland is not a right-to-work state, so the clause was enforceable. Because Love was now in Maryland, she was required to pay her "financial core" obligation to the union. Since the move, Love has tendered her regular monthly dues but refused to pay a new initiation fee requested by the union. Local 2 demanded that Love pay the fee or be fired.

This led the general counsel to issue a complaint charging Local 2 with a violation of § 8(b)(1)(A). The Board conducted a hearing and, upon cross motions for summary judgment, found that the union's demand for a new initiation fee amounted to an unfair labor practice. The Board stated: "We therefore conclude that the imposition of a second initiation fee on [Love] acted as a penalty against [Love] for her exercise of her Section 7 rights." *Office and Professional Employees, Local 2,* 292 NLRB No. 22. Local 2 was ordered to rescind its demand for a new fee.

## II

Local 2 urges us to deny enforcement of the Board's order. It points to the proviso in § 8(a)(3) of the Act which, in the absence of applicable state law, allows collective bargaining agreements requiring employees to become "members" of a representative union as a condition of employment. The proviso is the statutory authority for union security agreements such as the one in this case, which would otherwise be barred by §§ 8(b)(1)(A) and 8(a)(1). "Membership" in this context has a narrow meaning. "Under § 8(a)(3), the only aspect of union membership that can be required pursuant to a union shop agreement is the payment of dues. 'Membership as a condition of employment is whittled down to its financial core.'" *Pattern Makers' League of North America v. NLRB,* 473 U.S. 95, 106 n. 16, 105 S.Ct. 3064, 3071 n. 16, 87 L.Ed.2d 68 (1985) (quoting *NLRB v. General Motors,* 373 U.S. 734, 742, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963)) (citations omitted).

Local 2 considers the second initiation fee part of Love's "financial core" responsibility. Local 2 explains that when Love quit the union in Virginia in 1986, she became a stranger to it. She paid no more dues and severed all her union obligations. When the company transferred Love to Maryland, there was no difference between Love and a new employee entering the bargaining unit for the first time. Part of a new employee's financial core responsibilities to the union would be payment of the initiation fee. Thus, Local 2 reasons that it can require the same of Love.

The parties tell us that this is a novel situation. Certainly it is one not addressed directly by the statute. In these circumstances, we should uphold the Board's construction of the statute if "reasonable[;] it should not be rejected 'merely because the courts might prefer another view.'" *Pattern Makers,* 473 U.S. at 114, 105 S.Ct. at 3074 (quoting *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)).

The Board's construction of the Act is reasonable. Although Local 2 has placed Love in the shoes of a worker joining the bargaining unit in Maryland for the first time, the Board quite accurately points out that Love was at all times a member of the same bargaining unit. Had she remained a union member while in Virginia but quit it in Maryland, she would owe only dues and no initiation fee. The same would be true if she never left the union. Love's position differs in only one respect from either of these situations. She exercised her right not to belong to the union in a state with right-to-work legislation.

The Board relies on several cases that caution against constraining the right to resign from a union. In *Professional Engineers Local 151 (General Dynamics)*, 272 NLRB 1051 (1984), the Board held that a union could not require two employees who had quit their membership during a strike to pay a second initiation fee if the employees had no interest in rejoining the union. Under the union security clause in effect the Board limited the financial responsibilities of the employees to their regular dues. *Accord General Teamsters Local No. 439 (Tracy American Ready Mix Co.)*, 281 NLRB 1232 (1986), enf'd, 837 F.2d 888 (9th Cir.1988); *see also United Food and Commercial Workers Local 115 (California Meat)*, 277 NLRB 676 n. 1 (1985). The stretch to this case is slight. Love left the union but not the bargaining unit in a right-to-work state, while the employees in *General Dynamics* resigned their membership in a state without right-to-work legislation. The Board is simply according employees who resign in right-to-work and nonright-to-work states similar treatment by defining their core financial responsibilities the same. It is hard to imagine a more reasonable approach to the Act.

At oral argument Local 2 cited several cases in which the Board recognized that a union could levy a reinstatement fee that was not excessive. In each case, however, the employee in question had left the bargaining unit for several years or was joining it for the first time, and in each the employee wanted reinstatement to the union. *See NLRB v. Fisherman and Allied Workers Union, Local 33*, 448 F.2d 255 (9th Cir.1971) (employee returning to bargaining unit and union after a six-year absence); *NLRB v. International Union of Operating Eng'rs, Local 139*, 425 F.2d 17 (7th Cir.1970) (employee returning after six-year absence); *International Ass'n of Machinists, Local 504*, 99 NLRB 1430 (1952) (former union member entering bargaining unit for first time). The distinctions are important, for here, as the Board emphasized, Love had at all times been a member of the bargaining unit and did not care to rejoin Local 2.

■ Because the union's position is not frivolous, we deny Love's motion for sanctions and double costs.

ENFORCED.

MURNAGHAN, Circuit Judge, dissenting:

Janet Love was an employee of Washington Gas Light Company at its Virginia facility from 1974 until February 1, 1987, when she was transferred to a work location of that employer in Maryland. From October 1974 until June 5, 1986, Janet Love had been a member of the Office and Professional Employees International Union, Local No. 2, paying the required initiation fee and executing a union dues check-off authorization. On June 5, 1986, however, Love resigned from the union and revoked her dues check-off authorization. Her resignation was unambiguously total. As Virginia is a right-to-work state, from June 5, 1986, until she left Virginia for Maryland, no financial demands were made on Love by the union.

In Maryland, however, the union security provisions of the collective bargaining agreement, not applicable in Virginia, are permissible. As a consequence, since her arrival in Maryland, Love has paid the customary monthly dues of $17.00 to the union. Not wishing to renew her full membership in the union, Love has contended that her obligation is restricted to the financial core obligation of paying dues, but that she is not obligated to pay an initiation fee of $25.00. The union has threatened

that it will seek discharge of Love if the initiation fee is not paid.

In the present proceeding initiated by the National Labor Relations Board, the NLRB held that Love is not to be required to pay the initiation fee because that would represent a coercive action against her in violation of § 8(b)(1)(A) of the National Labor Relations Act (29 U.S.C. § 158(b)(1)(A)).[1] The NLRB determined that the second initiation fee restrained and coerced Love in the exercise of her protected right to resign and not to participate in union activities. The NLRB's determination, in ignoring the union's right "to prescribe its own rules" as to "acquisition or retention of membership," has proceeded, however, by restricting the alternatives available to Love to the extremes of being either for the union or against it. Certainly Love cannot be forced to become a full union member. *See Pattern Makers' League of North America v. NLRB*, 473 U.S. 95, 106, 105 S.Ct. 3064, 3071, 87 L.Ed.2d 68 (1985). She can, however, in states such as Maryland where a union security agreement is permitted, be required to pay dues and fees. 29 U.S.C. § 158(a)(3).

Thus the radical oversimplification of assuming only two possibilities as to the Maryland union status of Love exist, that of "complete union membership" or complete union "non-membership,"[2] must give way. In fact, there are at least two other categorizations, one of which is applicable here and one of which is not. Love is a "dues paying non-member."[3] She is not a "non-dues paying member" which might be the case for a member suffering from a debilitating injury or affected by superannuation.

It is, in this connection, informative that § 8(a)(3) (29 U.S.C. § 158(a)(3)) of the National Labor Relations Act permits collective bargaining agreements requiring "as a condition of employment membership [in the union] on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later...." That provision also forbids discrimination by an employer against an employee for non-membership in the union if membership was denied for reasons other than "the failure of the employee to tender the periodic dues *and the initiation fees* uniformly required as a condition of acquiring or retaining membership." *Id.* (Emphasis added.) The Supreme Court has interpreted "[m]embership as a condition of employment [to be] whittled down to its financial core." *NLRB v. General Motors Corp.*, 373 U.S. 734, 743, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963).[4]

---

1. Section 8(b)(1)(A) of the Act provides:

    (b) It shall be an unfair labor practice for a labor organization or its agents—

    (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; ....

    Section 157 of the Act further provides that:

    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and *shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment* as authorized in section 158(a)(3) of this title.

    (Emphasis added.)

2. It would unnecessarily exacerbate things to use the pejorative phrase: "anti-union membership." Nevertheless, in Virginia, from 1986 on, Love was a complete and total non-member. By virtue of the move to Maryland there was some change in her status "affected by an agreement requiring membership." 29 U.S.C. § 157.

3. To the extent that the union has sought to regard payment of the initiation fee as the equivalent of full membership, it might be appropriate to require that Love no longer be regarded a member, but not that the initiation fee remain unpaid.

4. More recently in *Pattern Makers' League of North America v. NLRB*, 473 U.S. 95, 106 n. 16, 105 S.Ct. 3064, 3071 n. 16, 87 L.Ed.2d 68 (1985), the Court cited *General Motors* for the proposition that "[u]nder § 8(a)(3), the only aspect of union membership that can be required pursuant to a union shop agreement is the payment of dues. *See Radio Officers v. NLRB*, 347 U.S. 17, 41, 74 S.Ct. 323, 336, 98 L.Ed. 455 (1954) (union security agreements cannot be used for 'any

The NLRB has interpreted the requirement of a *second* initiation fee as a prohibited penalty. Yet an initiation fee clearly is encompassed within the permitted definition of a financial core requirement. It reflects a change in status which has indubitably occurred. Certainly the majority is correct that we are bound to uphold the Board's construction of the statute *if it is a reasonable one. Pattern Makers,* 473 U.S. at 114, 105 S.Ct. at 3074 (quoting *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)). In the situation before us I do not find the Board's interpretation to be at all reasonable. Rather it is in direct contradiction both to the statutory language of § 8(a)(3) quoted above and to the common sense to be employed in its interpretation.

The NLRB places great reliance on *Professional Engineers Local 151,* 272 NLRB 1051 (1984). While deference to the agency may be great, it is not total. A blatant error of law underlying a regulation or other agency action may not be countenanced because of deference. *NLRB v. Brown,* 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (Courts are not "to stand aside and rubber-stamp ... administrative decisions that [are] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.").

I do not accept that the NLRB, apparently by no more than an *ipse dixit* approach, has the power to hold that the monthly dues are financial core obligations which may be demanded by the union month after month, but that a modest initiation fee may not be required a second time from someone who has severed all ties with the union, because it constitutes a penalty for resigning. The resulting discrimination between first-time employees and those who have previously been members but have absolutely and unreservedly resigned their

membership makes little sense and creates a blatant disparity in treatment which should not readily be imported into labor law.

The coercion the NLRB asserts derives from the supposition that enforced union membership flows from payment of the initiation fee.[5] Yet that would not need to be the case. Love's move from Virginia to Maryland brought about a change in her status from "non-member" in all respects to dues paying financial core member only. Persons entering the latter status can justifiably, to meet administrative costs associated with entrance into such status, be required to come up with a fee imposed on all dues payers, whether members or not. In other words the remedy should at most be a requirement that membership status not be compelled, not that payment of the initiation fee be enjoined.

That would appear to be demonstrated by a point not contested by the NLRB, Love or the union. A new employee going to work in Maryland for Washington Gas Light *for the first time* would, without objection by the NLRB, have to pay the initiation fee in order to remain employed by Washington Gas Light. He or she would do so, however, not as a union member, but as a dues payer for whom the union had to maintain some official records (and bear the expense thereof) in order to discharge its obligations to represent dues payers (*i.e.,* its core responsibilities). *See Radio Officers' Union v. Labor Board,* 347 U.S. 17, 41, 74 S.Ct. 323, 336, 98 L.Ed. 455 (1954) (§ 8(a)(3) recognized Congress' concern about employees receiving benefits of union representation without contributing their share of financial support). The initiation fee in such a circumstance is not a penalty or proof of a forced full union membership but merely a financial core requirement.[6] It reflects the fact that

---

purpose other than to compel payment of dues and fees.')." While the word the Court used in *General Motors* is "dues," the cases it cited with approval used the statutory language of "dues and fees." The question takes on a circular quality if one ignores that any fee, including an initiation fee, has one universal attribute. It becomes *due.*

**5.** No instances are advanced of any concerted activities being required of Love. 29 U.S.C. § 157 (§ 7 of the Act).

**6.** Such a new employee may object to union membership. *See NLRB v. General Motors Corp.,* 373 U.S. 734, 743–44, 83 S.Ct. 1453, 1459–60, 10 L.Ed.2d 670 (1963). He or she must

someone who has totally withdrawn from membership needs some processing a current full member does not.

It is conceded that someone who had never been a member of the union, who had worked in Virginia exactly as Love has done (without, however, ever paying union dues or an initiation fee) would have to pay an initiation fee, not as a new union member, but as a dues paying non-member, upon her transferring from Virginia to Maryland. It is thus entirely reasonable to require the same of Love, not as a penalty for resigning but as a financial core responsibility due because of her transfer to Maryland.

Therefore, I respectfully dissent.

nevertheless undergo, and pay for, the newly acquired status as a dues payer. *Id.*